[No. 15702. Department One. June 7, 1920.]

THE STATE OF WASHINGTON, *on the Relation of
James Bagley, Plaintiff*, v. C. W. CLAUSEN,
*as State Auditor, Respondent.*[1]

STATES (11)—OFFICERS (43)—SALARY—INCREASE DURING TERM—
ADDITIONAL DUTIES—STATUTES. The duties of the state mining in-
spector under the coal mining code, Laws of 1917, p. 109, being
practically the same as under chapter 130, Laws of 1919, p. 309, the
legislature could not by the later act, increase his salary during his
term of office by reason of the addition of new duties which were
only incidental, collateral or germane to his prior duties; and the
additional duty of certifying certain facts from the records of his
office is germane and incidental only.

Application filed in the supreme court December 30,
1919, for a writ of mandamus to compel the state audi-
tor to issue certain salary warrants to the state mine
inspector. Denied.

*W. V. Tanner*, for relator.

*The Attorney General* and *G. H. Bucey*, for respond-
ent.

MAIN, J.—This is an original application in this
court for a writ of mandamus. The relator is the state
mine inspector and the respondent the state auditor.
This is a companion case to that of *State ex rel.
Younger v. Clausen*, ante p. 241, 190 Pac. 324, which
will herein be referred to as the case of the state labor
commissioner. The two cases were covered in the
same briefs and were argued together. In this case
it will not be necessary to do more than examine the
powers and duties of the mine inspector as they were
defined by law prior to the act of 1919 (Laws of 1919,
ch. 130, p. 309), and compare them with his powers and
duties under that act.

[1]Reported in 190 Pac. 329.

The relator, by this action, claims the right to certain salary warrants under the act of 1919. The term of the mine inspector is for a period of four years, the relator having begun his term on July 6, 1917. The act of 1919, upon which he relies, was passed during the term which he was then serving and was designed to increase his salary during that term. The respondent, the state auditor, refused to issue the warrants, claiming that the act was inhibited by that provision of the constitution which provides that the compensation of a public officer shall not be increased or diminished during his term of office. The case presents the same general question as was presented in the case of the state labor commissioner.

For the purpose of determining whether the new duties imposed upon the state mine inspector fall within that class which is outside or extrinsic to his duties under the prior law, or whether they fall within the class of incidental, collateral or germane duties, attention will be first given to his duties under the law as they existed at the time of his appointment, and this will be followed by a review of the duties imposed upon him by the act of 1919. The office of inspector of coal mines was originally created in 1897 (Laws of 1897, ch. 45, p. 58), but the relator holds his present office under chapter 36, Laws of 1917, p. 109, known as the Coal Mining Code. This code is a comprehensive act and describes in detail the requirements to be observed in the operation of coal mines, various regulations being therein provided concerning safety, health, inspection, hours of labor, etc. Under § 7, p. 116, of the code it was made the duty of the mine inspector to enforce the provisions of the act and he was required to devote his entire time to the duties of the office. Under § 8, p. 117, it was his duty to "enter, inspect and examine

any coal mine in this state, and the workings and the machinery belonging thereto.'' It was further made his duty to make and keep a record of each visit, noting the time and material circumstances of the inspection. In other provisions of the code certain safe place and safety device standards were prescribed which were to be observed in the operation of a coal mine. The act fixes the mine inspector's salary at $3,000 per year. In general, under the act, the mine inspector was required to make inspections, keep a record thereof, and enforce the provisions of the act, including the safe place and safety device standards prescribed therein. He was further required, by § 10 of the code, to transmit a synopsis of his annual report to the governor of the state not later than March first of each year.

Reference will now be made to the duties imposed upon the mine inspector by the act of 1919. By § 7 of this act, the state mine inspector bears the same relation to the state safety board as does the commissioner of labor. Section 8 provides for the promulgation of the standards of safety as set out in the case of the state labor commissioner. Section 9 provides that the safe place standards and the safety device standards for coal mines of the state shall be those prescribed by the coal mining code. By § 10, the educational standards for coal mines are to be prescribed by the board created, to be known as the state mining board, consisting of two members to be appointed by the state safety board. By section 18, any coal mine employer, or workman, or association of either, or any joint committee of such employers and workmen, or the state mine inspector, are authorized to make recommendations to the state mining board of educational standards. By § 28, it is provided that the state mine inspector shall have sole charge of the enforcements of

the standards of safety for coal mining and of the inspection incident thereto. By section 49, it is made the duty of the state mine inspector, by himself or deputy, to inspect every coal mine in the state not less than once every four months, for the purpose of ascertaining whether the safety standards applicable thereto are being complied with. This section further provides that the state mine inspector, at the end of each calendar year, shall certify to the state industrial insurance commission the compliance or noncompliance with the safety standards on the part of each coal mine employer in the state during that year. Section 32 of the act provides that the mine inspector shall receive a monthly salary of $100 per month for the performance of his duties in enforcing the use of "safety standards and inspecting and certifying the same," this monthly salary to be in addition to the salary which is provided for him by the coal mining code.

It thus appears that the additional salary is for his duties in enforcing (a) the use of safety standards, (b) inspecting, and (c) certifying the same. The safety standards which the mine inspector was required to enforce under this act were the same as those which he was required to enforce under the prior law. The act of 1919 (Laws of 1919, p. 309), § 9, expressly provides the safe place standards and the safety device standards for coal mines shall be those prescribed by the coal mining code. The mine inspector's duty as to inspections under the act of 1919 are practically the same as those which he was required to perform under the prior law, and is still required to perform. Substantially, the only new or additional duty which is imposed upon the mine inspector for which the additional salary is allowed is the requirement that he shall make a report annually to the state industrial insur-

ance commission. The facts which he shall report are those which, under the coal mining code, he is required to ascertain by inspection and keep a record thereof. It will not do to hold that, because one state officer is required to perform the additional duty of certifying certain facts from the records of his office to another officer of the state or agency of the government, he is thereby performing new and additional duties which are extrinsic to, and outside of, the duties that he is required to perform in collecting and recording such facts. The certification of these facts to another state officer or agency of the government is but incidental or germane to the duties of his office. If, by such a device, the salary of a public officer during his term can be increased, the constitutional provision inhibiting the increase or diminishing of salaries during a term of office would be of little consequence. As stated in the case of *State ex rel. Davis v. Clausen,* 47 Wash. 372, 91 Pac. 1089, cited in the case of the state labor commissioner, this provision of the constitution "must not be construed out of existence or evaded by legislative enactment." The additional duties of the mine inspector, created by the act of 1919, more clearly fall within that class of duties which is incidental or germane to his duties under the prior law than do those of the state labor commissioner.

The writ will be denied.

HOLCOMB, C. J., MITCHELL, PARKER, and MACKINTOSH, JJ., concur.