1998 OK 118

**STATE of Oklahoma, ex rel. Attorney General W.A. Drew EDMONDSON, Appellant,**

v.

**OKLAHOMA CORPORATION COMMIS-SION and Commissioners Cody Graves and Bob Anthony, Appellees.**

No. 90039.

Supreme Court of Oklahoma.

Dec. 8, 1998.

As Corrected Dec. 10, 1998.

W.A. Drew Edmondson, Attorney General of the State of Oklahoma and Douglas F. Price, Assistant Attorney General, Oklahoma City, Oklahoma, for Appellant.

Lawrence R. Edmison, Rachel Lawrence Mor and Tom Tucker, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for Appellees.

HARGRAVE, J.

¶1 The issue is whether the Oklahoma Legislature's amendment of Article 9 § 18a of the Oklahoma Constitution to provide for pay increases during the terms of office of the Corporation Commissioners violates Article 23 § 10 of the Oklahoma Constitution, which prohibits change in the salary of any public official during the official's term of office unless otherwise provided. The pay raise for the Corporation Commissioners was implemented by Title 74 O.S. § 250.4, which raised the salaries of several state officers beginning with their terms of office on or after January 1995. We find that the amendment violates Article 23 § 10 of the Oklahoma Constitution.

¶2 The Corporation Commission was created under the provisions of he Oklahoma Constitution, Article 9, §§ 15 through 34. Section 35 of Article 9 gives the Legislature the power to alter, amend, revise or repeal sections 18–34 of Article 9, or any amendments thereto. That power is limited, however, in that no amendment made under authority of Section 35 shall contravene any other provisions of the Constitution.

¶3 The Oklahoma legislature, by Laws 1995, ch. 328 § 1, emer. eff. June 8, 1995, amended Article 9 § 18a to provide that the salary of Corporation Commissioners would be set by the Legislature and could be increased at any time during their terms of office. The pay increase was implemented by title 74 O.S. Supp.1996 § 250.4.[1] Article 9 § 18a, provides:

3. The Attorney General shall receive a salary equal to the salary received by a district judge;
4. The State Superintendent of Public Instruction shall receive a salary equal to the salary received by a district judge;
5. Each member of the Corporation Commission shall receive a salary equal to the salary received by an associate district judge in a county with a population of over thirty thousand (30,000);

\* \* \*

Laws.1994, c. 239 § 3. Section 250.4 was amended again by Laws 1997, c. 384, § 1.

1. Title 74 O.S. Supp.1996 § 250.4 **State officers-Salaries:**
Pursuant to provisions of the Constitution of the State of Oklahoma from and after the beginning date of a term of office which commences in, or after, January, 1995, the following officers of the State of Oklahoma shall be annually compensated for their services, payable monthly, as follows:
1. The Governor shall receive a salary of Seventy Thousand Dollars ($70,000.00);
2. The Lieutenant Governor shall receive a salary equal to the salary received by an associate district judge in a county with a population greater than ten thousand (10,000) and less than thirty thousand (30,000);

A. The salary of Corporation Commissioners shall be set by the Legislature and may be increased at any time during the term of their office. The purpose of this provision is to assure that all Corporation Commissioners are paid equal salaries for their service, without regard to the time of their appointment or election.

¶ 4 Commissioner Bob Anthony sought an opinion from the Attorney General as to the legality pay increase, posing the question: "May the Legislature pursuant to authority granted in Article IX, § 35, of the Oklahoma Constitution, amend Article IX, § 18a of the Constitution to provide that salaries of the Corporation Commissioners may be increased during the term of their office regardless of the time of their appointment or election?"

¶ 5 The Attorney General issued an opinion finding the amendment unconstitutional as to the two Corporation Commissioners, Bob Anthony and Cody Graves, whose terms of office began before the effective date of the statute.[2] Specifically, Attorney General's Opinion No. 97–21 stated that:

a. The salary adjustment restrictions of Article VI, § 34 and Article XXIII, § 10 of the Oklahoma Constitution preclude the Legislature from increasing the salary of executive officers, including the Corporation Commissioners, during their term of office.

b. Article IX, § 35 of the Oklahoma Constitution grants authority to the Legislature to amend Article IX, §§ 18—34, but such amendments may not contravene the provisions of any part of the constitution not found within Sections 18—34.

c. The Legislature may not, under the authority of Article IX, § 35 of the Oklahoma Constitution, grant itself the authority to set the salaries of Corporation Commissioners in a manner which violates either Article VI, § 34 or Article XXIII, § 10 of the Oklahoma Constitution.

d. Application of any salary increase provisions of 74 O.S. Supp.1996 § 250.4(5) to Corporation Commissioners elected before January 1995 (the effective date of 74 O.S. Supp.1996 § 250.4(5)) violates Article VI, § 34 and Article XXIII, § 10 of the Oklahoma Constitution.

¶ 6 Because the Attorney General's opinion left the salaries of two of the Commissioners "in limbo," the Attorney General filed an action for declaratory judgment in the district court of Oklahoma county. The trial judge found the amendment constitutional.

¶ 7 The Attorney General argues that the amendment violates Article 23 § 10 of the Oklahoma Constitution which prohibits the increase in salary of public officials during their terms of office unless otherwise provided in the Constitution. Article 23 § 10 provides:

Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed: Provided, that all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified.

¶ 8 In *Bond v. Phelps*, 200 Okla. 70, 191 P.2d 938 (Okla.1948) we recognized that Article 23 § 10 applies to Corporation Commissioners, but held that where the legislature had imposed additional duties upon the Corporation Commissioners that were not germane to their office, Commissioners who chose to participate were entitled to the increased compensation during their present terms of office. *See also, in this regard*, *Phelps v. Childers*, 184 Okla. 421, 89 P.2d 782 (Okla.1939) (where new statutory duties imposed on public official are incident to or germane to the office, additional compensation provided therefor violates Article 23, § 10).

¶ 9 The Commission argues that Article 23 § 10 does not apply to the Corporation

**2.** The Corporation Commission's brief recites that, although named as defendants in the declaratory judgment action, Commissioners Graves and Anthony did not file appearances in the trial court.

Commissioners because it is "otherwise provided in this Constitution" that their salaries may be increased, namely, under Article 9, Section 18a. This begs the question because it presumes the validity of Article 9, Section 18a. If the Legislature lacked authority under Article 9 Section 35 to amend § 18a to raise Corporation Commissioners' salaries during their terms of office, then it is not "otherwise provided" in the Oklahoma Constitution that their salaries can be increased during the current term of office.

¶ 10 The authority of the Legislature to amend or alter Article 9 is limited. Section 35 of Article 9 spells out the limited authority of the Legislature:

> After the second Monday in January, nineteen hundred and nine, the Legislature may, by law, from time to time, alter, amend, revise or repeal sections *from eighteen to thirty-four, inclusive of this article,* or any of them, or any amendments thereof: *Provided, that no amendment made under authority of this section shall contravene the provisions of any part of this Constitution other than the said sections last above referred to or any such amendments thereof.* (emphasis added)

No part of sections 18 through 34 addresses compensation of the Corporation Commissioners.[3] There is no authority given by Article 9 § 35 permit the Legislature to amend the Constitution to increase the salary of Corporation Commissioners during their terms of office in contravention of Article 23 § 10. Thus, the amendment to Article 9,

Section 18a cannot be considered an alteration, amendment, revision or repealer of those sections, but rather is legislation on an entirely new subject. The Legislature is without constitutional authority for the amendment. The amendment contravenes the provisions of other parts of the Constitution, which is expressly prohibited by Section 35 of Article 9. The amendment to 18a of Article 9 violates Article 23, Section 10 of the Oklahoma Constitution, which prohibits the salary of any public official from being changed during the official's term of office, as discussed below.

¶ 11 The purpose of constitutional provisions prohibiting changes in the compensation of a public official during the current term of office has been described as intended to establish definiteness and certainty as to the salary pertaining to the office, and to take from public bodies the power to make gratuitous compensation to such officers in addition to that established by law. 63 Am. Jur.2d Public Officers and Employees, § 294. Limitations of this kind are designed to establish the complete independence of the three branches of government. *Riley v. Carter,* 165 Okla. 262, 25 P.2d 666, 670 (1933). The Supreme Court of California has pointed out that one of the primary purposes of the prohibition against an increase in compensation is to prevent office holders from using their influence and position to secure salary increases after they have been elected. *McKesson v. Lowery,* 51 Cal.2d 660, 335 P.2d 662, 663 (Calif.1959).[4]

**3.** Section 18 sets out the powers and duties of the Commission; Section 18a provides for organization and Section 18b defines the term "company" as used in the article; Section 19 gives the Commission the powers of a court of record in certain matters and enforcement powers; Section 20 provides for appeals from actions of the Commission; Section 21 concerns supersedeas, security accounts, refunds and precedence of appeals; Section 22 concerns the record on appeal; Section 24 provides that certain rights of action in the courts shall not be affected; Section 25 requires the Commission to make annual reports to the Governor; Section 26 requires railways to provide clean and safe depots and buildings; Section 27 concerns railroad crossings; Section 28 provides for inspection of books and papers of public service corporations or railroads; Section 29 concerns the Commissions keeping of information as public record; Section 30 regulates

charges by transportation or transmission companies; Section 31 prohibits certain foreign corporations from exercising the right of eminent domain until it becomes a body corporate under the laws of Oklahoma; Section 32 concerns the Commission's power and duty to investigate passenger and freight rates on railroads; Section 33 gives Commission authority to build and maintain switches to mines, mills, elevators and industries; Section 34 includes definitions and provides that the provisions of Article 9 shall not conflict with any provisions of the Constitution of the United States.

**4.** We think the intent of such provisions was particularly well-stated in the dissenting opinion in *Scalo v. Mandanici,* 179 Conn. 140, 425 A.2d 1272, 1278 (Conn.1979), observing that constitutional provisions delaying the effectiveness of a pay increase were intended by the drafters to

¶ 12 We have recognized that Article 23 § 10 may result in differences in the salaries of public officials performing the same duties. In *Barton v. Derryberry*, 500 P.2d 281, 282 (Okla.1972), we referred to cases in which we have held that the "unless" phrase of Article 23, § 10 permits a difference in a public officer's salary during his term resulting from the operation of a statute enacted before his election. Thus, we said, the salary of an officer may be increased after his election or during his term of office where the law that operates to increase the salary was enacted prior to his election. . Likewise, in *Phelps v. Childers, supra*, we considered the argument that the plaintiffs were receiving less in salary than their associates and that the compensation provided for in the Act would result in their receiving the same compensation as their associates, noting that the same argument was made in many of the cases announcing the rule. We said that it is not within the province of the judiciary to question the wisdom or motives of a lawmaking body in the enactment of a statute, and the same cannot be taken into consideration in determining its constitutionality. 89 P.2d at 787.

■ ¶ 13 The authority of the Legislature, both the power to legislate and the limitation of that authority, is derived from the Oklahoma Constitution. Article 5, § 36 of the Oklahoma Constitution sets out the Legislature's authority to legislate:

> The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this constitution, upon any subject whatsoever, shall not work a restriction, limitation or exclusion of such authority upon the same or any other subject or subjects whatsoever.

We said in *Spearman v. Williams*, 415 P.2d 597, 600 (Okla.1966) that the state Constitution is a limitation upon the power of the Legislature and not a grant of power, and that the authority of the Legislature extends to all rightful subjects of legislation *not withdrawn by constitution or in conflict therewith*. The restriction on legislative power is

strictly construed so that matters not covered by the Constitution will be within the power of the Legislature. *Jackson v. Freeman*, 905 P.2d 217, 221 (Okla.1995).

■ ¶ 14 Where the constitutionality of an act of the legislature is in question, all reasonable doubt will be resolved in favor of its validity and the act will be declared constitutional unless it can be demonstrated clearly that the legislature acted arbitrarily and capriciously exercised its authority. *Fair School Finance Council of Okla. v. State*, 746 P.2d 1135, 1150 (Okla.1987). There we said that in view of the few restrictions placed by state Constitution on legislative power to provide school system for state and the methods employed by the legislature for doing so, the state public school financing system was not subject to strict judicial scrutiny for purposes of equal protection challenge to public school financing system. Const. Art. 2, § 7.

■ ¶ 15 In reviewing the constitutionality of a statute, the Supreme Court is not authorized to consider its propriety, desirability, wisdom or practicability as a working proposition. *Application of Oklahoma Capitol Improvement Authority*, 355 P.2d 1028, 1031 (Okla.1960). The function of the Supreme Court is clearly limited to determination of the validity or invalidity of the Act. *Id.*

¶ 16 In *Jackson v. Freeman*, 905 P.2d 217, 221 (Okla.1995) we said that generally we do not look to the Constitution to determine whether the Legislature is authorized to do an act, but rather, to see if the act is prohibited. A constitutional restriction on the legislative power is construed strictly. *Draper v. State*, 621 P.2d 1142, 1146 (Okla. 1980). Matters not covered by the constitutional language will be construed to be within the power of the legislature. In that case, where the Constitution gave the legislature the power to alter, change or restructure the Court of Criminal Appeals, we concluded that 20 O.S. Supp.1994 § § 60.1—60.5, creating an emergency appellate division of the Court of Criminal Appeals was consistent with the Oklahoma Constitution, Article 7 § 1. Article

---

insure that *increases enacted at taxpayer's expense would be for the benefit of the office, and not for*

*the immediate benefit of the particular officer then holding that office.* (emphasis added)

7 § 1 provided that the Court of Criminal Appeals, the State Industrial Court, the Court of Bank Review and the Court of Tax Review and such Boards, Agencies and Commissions as have been established by statute shall continue in effect, *subject to the power of the Legislature to change or abolish said Courts, Boards, Agencies or Commissions.* The issue was whether creation of the Emergency Appellate Division was within the Legislature's power to change the Court of Criminal Appeals. We said that the Court of Criminal Appeals is a legislative court because of the powers expressly given to the Legislature to change it or abolish it in Const. Art. 7 § 1. We concluded that the legislative creation of the emergency appellate division for the Court of Criminal Appeals did not run afoul of Article 7 of the Oklahoma Constitution.

¶ 17   A public officer is bound to perform the duties of the office for the compensation fixed by law. An officer who accepts an office to which a fixed salary or compensation is attached is deemed to undertake or perform its duties for the salary or compensation fixed, though it may be inadequate, and if the proper authorities increase its duties by the addition of others germane to the office, the officer must perform them without extra compensation. *Aubrey v. Huser*, 201 Okla. 60, 201 P.2d 249, 253 (Okla. 1948). *See also, Bass v. Bd. of Commissioners of Lincoln Co.*, 97 Okla. 94, 222 P. 995, 996 (Okla.1924) (the salary the plaintiff was entitled to receive was that fixed by the act of the Legislature which was in effect at the time the plaintiff was elected to the office; Section 10, article 23 prohibited the plaintiff from claiming the salary fixed by the later legislative act).

¶ 18   The Legislature lacked constitutional authority to amend Article 9 § 18a to increase the salaries of Corporation Commissioners during the current term of office. The amendment violates Article 23 § 10 of the Oklahoma Constitution.

¶ 19   Because the amendment violates Article 23, Section 10 of the Oklahoma Constitution, which is dispositive of the issue, we need not determine whether the amendment also violates Article 6, Section 34, which provides that compensation for the executive branch officers named in the article shall not be increased or diminished during the term for which he or she shall have been elected.

¶ 20   Lastly, the Commission argues that because it has the powers of a court of record pursuant to Article 9 section 19, it should be aligned with the judicial branch of government for purposes of compensation. Article 7, § 11 of the Oklahoma Constitution provides that the compensation of judges and justices shall not be diminished during their terms of office, but may be increased. This argument is without merit. Corporation Commissioners, even when acting in an adjudicatory capacity, are not "judges." *See, State ex rel. Blankenship v. Freeman, infra.*

¶ 21   The Oklahoma Corporation Commission is a tribunal of limited jurisdiction and only the authority expressly stated or necessary by implication is conferred by the Oklahoma Constitution. *State ex rel. Corp. Com'n ex rel. Loving*, 918 P.2d 733 (Okla.1996). The Corporation Commission must exercise the authority of the state to supervise, regulate and control public service corporations, and to that end, it has been clothed with legislative, executive and judicial powers. *Southwestern Bell Telephone Co. v. Oklahoma Corp. Com'n*, 873 P.2d 1001 (Okla. 1994), *cert. den.*, 513 U.S. 869, 115 S.Ct. 191, 130 L.Ed.2d 123. While the Corporation Commission may exercise legislative, executive and judicial powers, *the Commissioners are not judges*, and are properly considered under the executive department under Article 6 § 1 of the Oklahoma Constitution. *State ex rel. Blankenship v. Freeman*, 440 P.2d 744 (Okla.1968). Earlier, in *Vogel v. Corporation Commission*, 190 Okla. 156, 121 P.2d 586 (1942), we stated that despite the fact that the Corporation Commission exercises quasi-judicial functions, it is not a court, is not part of the judicial department and the commissioners are not judges. That case discussed *Atchison, T. & S.F. Ry. Co. v. State*, 31 Okla. 43, 119 P. 961, 962 (1911), which, in considering the jurisdiction of the Supreme Court to hear appeals in contempt proceedings from the Corporation Commission, said "[w]hile the Corporation Commission may and does possess some powers judi-

cial in character, it is primarily a commission of legislative and administrative powers, and is not a part of the judicial department of the government." *See also, Southwestern Bell v. Oklahoma Corporation Commission,* 873 P.2d 1001 (Okla.1994).

¶ 22 The Commission's attempt to characterize itself as a part of the judicial branch of government must fail. The Commission's argument that the Legislature intentionally tied the salary of the Corporation Commissioners to that of an associate district judge as evidence that the Corporation Commission is a court of record is not persuasive. The Legislature tied the salaries of several members of the Executive Department, including the Attorney General, to the salaries of certain judicial offices. 74 O.S. Supp.1996 § 250.4, *supra.*

### Conclusion

¶ 23 The Oklahoma legislature lacked authority under Article 9, section 35 to amend Article 9, section 18a to increase the salaries of Corporation Commissioners during their current terms of office. The amendment violates Article 23 section 10 of the Oklahoma Constitution which prohibits change in the salary of any public official during his or her term of office unless otherwise provided in the Constitution.

¶ 24 Article 23 § 10 does not prohibit any or all increases in the compensation of public officials, but only such increases as are intended to take effect during the current term of office. Their salaries can only be raised according to the strictures of Article 23 § 10: when a new term of office begins.[5]

REVERSED.

¶ 25 KAUGER, C.J., HODGES, LAVENDER, SIMMS, OPALA, ALMA WILSON, WATT, JJ., concur.

¶ 26 SUMMERS, V.C.J., not participating.

---

5. State Question No. 679, which would have amended Article 6, section 34 and Article 23, section 10 of the Oklahoma Constitution to allow members of the Oklahoma Tax Commission and the Oklahoma Corporation Commission to receive an increase in pay if the increase becomes law before they take office, was defeated by a vote of the people on November 3, 1998.